Kevin E. SMITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A05–0303–CR–105.

Court of Appeals of Indiana.

Feb. 4, 2004.

Stanley L. Campbell, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Kevin Smith was convicted after a jury trial of stalking, a Class C felony;[1] intimidation, a Class D felony;[2] and criminal recklessness, a Class D felony.[3] He raises

---

1. Ind.Code § 35–45–10–5.

2. Ind.Code § 35–45–2–1.

3. Ind.Code § 35–42–2–2. Smith was convicted of additional crimes but he does not challenge those convictions on appeal.

five issues on appeal, which we consolidate and restate as:

1. Whether his right to a speedy trial was violated when the trial court granted a continuance because the father of a State's witness had died;

2. Whether telephone messages, without more, may support a conviction of stalking; and

3. Whether there was sufficient evidence to support all three convictions.

We affirm.

## FACTS

At different times on August 21, 2001, Smith drove past the home of Michelle Aguirre, where his former girlfriend Kimberly Chivington was visiting. He waved a gun out the car window as he drove past. The last time Smith drove by, Chivington and Aguirre heard a banging sound and Aguirre saw smoke where the noise had originated. Later, as Chivington and Aguirre sat on the porch, Smith approached the house carrying a gun. Chivington was afraid of Smith, and she ran into the house and locked the door. Aguirre spoke to Smith and obtained his gun. She gave it to Chivington, who hid it. Chivington then returned to the porch and she, Aguirre, and Smith remained there until police arrived.

Several neighbors heard one or more gunshots during the incident and one neighbor saw Smith fire a gun. The 911 center received six calls reporting gunshots. Police found a car that matched the description the callers gave. It was registered to Smith's mother and had shell casings inside. They found Smith's gun where Chivington had hidden it.

The officers found Smith and arrested him for public intoxication. He fought with police and tried to escape. He spat on police and tried to kick out the police car window after he had been restrained. Smith was taken to a hospital, where he arrived kicking, screaming and yelling. He kicked a nurse in the chest and spat blood and saliva at hospital workers.

Smith was taken to the Allen County Lock-up, where he told Officer Adams, one of the arresting officers, he would be "looking out for him with his 7.62" (Tr. at 364), referring to the ammunition used in an assault rifle. After Smith was released on bond, he left Officer Adams eight or nine voice mail messages. He identified himself on all but one. The messages included obscenities and threats on Officer Adams' life. Officer Adams feared for his safety and that of his family.

Also in the summer of 2001, Smith encountered Officer Tague in a restaurant where the officer was providing security. Smith told Officer Tague he had been leaving messages for Officer Adams. Officer Tague told Smith he would be charged with intimidation and harassment if he did not stop calling. Smith then began leaving voicemail messages for Officer Tague. The messages contained obscenities and language such as "dead nigger" and "I got here a 9–millimeter, 44–AR–15, 30–06 with a scope nigger, a 37 sawed off shot gun[.]" (State's Exhibit 39.) Officer Tague feared for his safety and that of his family.

Smith was later arrested on outstanding warrants and charged with a number of offenses in three separate cause numbers, including the three charges at issue in the appeal before us. He requested a jury trial in one of the three causes on October 2, 2001, and in the other two on October 12, 2001. His jury trial was set for November 27, 2001, then rescheduled due to court congestion for December 18, 19, and 20, 2001. On December 13, 2001, the State moved to continue Smith's trial date because the father of a police officer who was

a State's witness had died. The trial court granted the continuance. Smith's trial was finally conducted the following October.

## DISCUSSION AND DECISION

### 1. *Speedy Trial*

 Ind.Crim. Rule 4(B)(1) provides in pertinent part: "If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion[.]" Any exigent circumstances may warrant a reasonable delay beyond the limitations of Crim. R. 4, due deference being given to the defendant's speedy trial rights under the rule. *Loyd v. State*, 272 Ind. 404, 409, 398 N.E.2d 1260, 1265 (1980), *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105 (1980). The reasonableness of such delay must be judged in the context of the particular case, and the decision of the trial judge will not be disturbed except for an abuse of discretion. *Id.* The purpose of Crim. R. 4(B) is to assure a speedy trial. *Id.* at 410, 398 N.E.2d at 1266. This purpose is well served if the State must bring a defendant to trial within seventy days or show compelling reasons for the failure to do so. *Id.* The rule was designed to assure criminal defendants speedy trials, not to provide them with a technical means of avoiding trial. *Id.*

In *Loyd,* the deputy prosecutor who was to try the case learned two days before the scheduled trial that his father had just suffered a massive heart attack and that his mother had terminal cancer. Our supreme court noted "[i]n addition to the emotional disability likely to have been produced by such shocking news and rendering a brief continuance reasonable, it was also necessary for him to attend to the emergency needs of his parents[.]" *Id.* No other attorney in the prosecutor's office could reasonably have prepared for trial upon such short notice. The supreme court determined the trial judge acted properly in granting the continuance and denying the motion for discharge. *Id.*

 On December 13, 2001, the State moved to continue Smith's trial date because the father of a police officer who was a State's witness had died. The trial court granted the motion. We note initially that Smith did not make a motion for discharge prior to trial. He has therefore waived this allegation of error on appeal. *Lockhart v. State*, 671 N.E.2d 893, 897 (Ind.Ct. App.1996).

 Notwithstanding the waiver, the trial court did not abuse its discretion in granting the State's motion for a continuance. Crim. R. 4(B)(1) does require a defendant to be brought to trial within seventy days of a motion for a speedy trial. However, Crim. R. 4(D) provides for an extension of this seventy-day period. The time within which a defendant who has demanded a speedy trial may be timely tried may be extended by an additional ninety days [4] if the court is satisfied there is State's evidence that cannot be had on

4. Smith's trial was re-set for the following April 15, which was not within ninety days. The April date was apparently the earliest date Smith's counsel was available. When it granted the State's continuance, the judge encouraged Smith's counsel to discuss with the chief public defender the possibility of an earlier trial date. Smith's counsel stated it would be "absolutely impossible for me to try it before that date" (Tr. of Hearing on Motion to Continue Jury Trial at 13) but he indicated he would turn his files over to the public defender's office and have other counsel appointed should an earlier trial date be available. However, the record does not reflect Smith took any action to schedule the trial earlier than April 15. We therefore decline to attribute to the State or the trial court the

the timely trial date but that will be available within ninety days. *Griffin v. State,* 695 N.E.2d 1010, 1013 (Ind.Ct.App.1998).

In *Griffin,* a State's witness was unavailable for a trial date sixty-nine days after the speedy trial motion because of a previous arrangement to be out of the country. The trial court granted the State's motion and reset the trial date for August 23, 1995 (ninety-eight days after the speedy trial motion). We determined that because the State did not cause the absence of the witness, the trial court was within its power to extend the speedy trial period by ninety days. *Id.* A new trial set for twenty-eight days after the expiration of the seventy-day period was therefore timely.

In *Griffin,* the reason for the witness's absence from the country was unclear. However, we noted our supreme court had previously held a vacation abroad is sufficient justification for invoking the 90–day extension under the rule. We further noted the extension may be obtained as long as the unavailability of the witness is due to no fault of the State. 695 N.E.2d at 1013 n. 2.

In the case before us the State's motion was premised on the police officer's unavailability[5] due to the death of his father, whose funeral was the day before Smith's trial. In light of the standards articulated in *Griffin* and *Loyd,* we cannot say the trial court's grant of the State's motion was an abuse of discretion.

### 2. *Stalking*

■ Smith's stalking convictions were based on voicemail messages left for two police officers, and Smith asserts telephone communications, without more, cannot amount to either the "impermissible contact," Ind.Code § 35–45–10–3, or "harassment," Ind.Code § 35–45–10–2, the State must prove to convict him of stalking. Stalking is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind.Code § 35–45–10–1. "Harassment" means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. Ind.Code § 35–45–10–2. "Impermissible contact" includes but is not limited to knowingly or intentionally following or pursuing the victim. Ind.Code § 35–45–10–3. All of these definitional terms, Smith asserts, "seem to contemplate some physical contact between a defendant and the victim." (Br. of Defendant–Appellant at 11.)

Smith offers us a thorough review of our decisions reviewing stalking convictions premised in part on telephone calls. All those decisions involved the defendant's physical presence in addition to phone calls. Smith directs us to no decisions indicating physical presence is required to uphold a stalking conviction, and the State

delay in rescheduling the trial within 90 days. Smith does not argue on appeal that the failure to re-set the trial for an earlier date was error.

5. It appears the trial could have proceeded as originally scheduled despite the officer's absence. Smith's counsel noted he was aware of what the officer's testimony would be, but stated he was "not willing on behalf of Mr. Smith to stipulate to the testimony of [the officer.]" (Tr. of Hearing on Motion to Continue Jury Trial at 7.) Smith stated "I believe it is necessary and it would be fair for me to have him there[.]" (Id. at 8.)

directs us to no Indiana decisions upholding a stalking conviction based on telephone calls alone. We accordingly seek guidance from decisions in other jurisdictions. Those decisions consistently hold a stalking conviction may be supported by evidence of telephone calls alone.

The Kansas supreme court, addressing a stalking definition substantially similar to that in Indiana,[6] noted Stalking does not require physical contact. Indeed, one of the purposes of the stalking statute is to criminalize behavior that impinges on ones privacy but which does not cross the line into physical contact. *State v. Whitesell*, 270 Kan. 259, 13 P.3d 887, 903 (2000).

In *State v. Shields*, 184 Or.App. 505, 56 P.3d 937, 941 (2002), *review denied* 335 Or. 355, 67 P.3d 937 (2003), the court found sufficient evidence of non-expressive contacts to allow the trial court to deny defendants motion for judgment of acquittal where on more than one occasion the victim answered phone calls from defendant during which he did not speak. The court found it sufficient for conduct to be a contact for purposes of the stalking statute if the act, when learned, gives rise to an unwanted relationship or association between the victim and the defendant. *Id.*

In *Pallas v. State*, 636 So.2d 1358, 1359 (Fla.Dist.Ct.App.1994), *decision approved* 654 So.2d 127 (Fla.1995), Pallas was charged with aggravated stalking: Any person who willfully, maliciously, and repeatedly follows or harasses another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury, commits the offense of aggravated stalking[.] *Id.* Pal-

las began calling the home of his estranged wifes parents, who were hiding the wife. The calls continued throughout the day and numbered fifty or more. Pallas had beaten his wife during the course of the marriage. Pallas demanded to know where his wife was. He screamed and cursed at her parents, he threatened to get them, he told them he had a gun and he was going to kill them. *Id.* The court found his acts permitted a conviction of stalking. *Id.*

In *Moses v. State*, 72 Ark.App. 357, 39 S.W.3d 459, 462 (2001), Moses called the victim so many times that she would no longer answer the telephone if she knew it was him calling. In one of his messages left on her answering machine, Moses told her to call him before it was too late. The victim initially interpreted this comment to mean Moses intended to kill himself, but after she thought about the statement and the other messages he had left for her, she believed he was threatening to do something to her if she did not call him. She was afraid for her life and the lives of her children and mother. The court found this conduct clearly constitutes a harassing course of conduct as contemplated by the statute. *Id.*

Finally, in *Jones v. State*, 239 Ga.App. 733, 521 S.E.2d 883, 885 (1999) the court determined "contact" in the context of an aggravated stalking statute, means to get in touch with or to communicate with. The terms harassing or intimidating mean a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm

---

**6.** Kan. Stat. Ann. 21–3438 states in pertinent part:

Stalking is an intentional, malicious and repeated following or harassment of another person and making a credible threat with the intent to place such person in reasonable fear for such persons safety … Harassment means a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose.

to ... herself ... and which serves no legitimate purpose. *Id.* Overt threats of bodily harm are not required. *Id.* A protective order required Jones to refrain from harassing his spouse, but he continued to telephone her at her work and home, communicating threatening messages patently designed to inflict fear of violent injury[.] *Id.* That evidence was sufficient to sustain Jones conviction of aggravated stalking.

We believe *Jones, Moses, Pallas,* and *Shields* were correctly decided and we accordingly hold telephone messages, without more, may amount to impermissible contact sufficient to support a stalking conviction. We cannot say Smiths conviction was error on that ground.

### 3. *Sufficiency of Evidence*

 Smith asserts the evidence was insufficient to sustain his convictions of stalking, intimidation, and criminal recklessness. In reviewing sufficiency of the evidence, we will affirm a conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Rogers v. State,* 741 N.E.2d 395, 396 (Ind. Ct.App.2000), *reh'g denied, trans. denied* 753 N.E.2d 16 (Ind.2001). When a conviction is based on circumstantial evidence, we will not disturb the verdict if the factfinder could reasonably infer from the evidence presented that the defendant is guilty beyond a reasonable doubt. *Id.* The circumstantial evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* Knowledge may be inferred from the facts and circumstances presented in each case. *Id.*

 Smith first asserts there was insufficient evidence he stalked Officer Adams because only one of the seven messages he left for Officer Adams contained a threat, and because no testimony identified him as one of the two voices on the threatening message. To convict Smith of stalking the State must prove he (1) knowingly or intentionally, (2) engaged in a course of conduct involving repeated or continuing harassment of the victim, (3) that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened, and (4) that actually caused the victim to feel terrorized, frightened, intimidated, or threatened. *Johnson v. State,* 721 N.E.2d 327, 331 (Ind.Ct.App. 1999), *trans. denied* 735 N.E.2d 225 (Ind. 2000).

Smith asserts "the one threatening message does not constitute a course of conduct that would amount to stalking." (Br. of Defendant–Appellant at 16.) We note initially that the jury could have reasonably concluded the content of more than one of the messages was threatening. In addition to the message Smith apparently concedes was threatening, the other messages contain statements such as "You're a dirty fucking cop. You're going to fucking pay for what you did to me mother-fucker" and "I break the law, I pay. You break the law, you will pay also. Have a nice day." (State's Exhibit 35.)

 We further note the "course of conduct" the State must prove need not involve multiple *threats,* but rather repeated or continuing "harassment." Ind. Code § 35–45–10–1. "Harassment" means conduct directed toward a victim that "includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind.Code § 35–45–10–2. The jury reason-

ably could have inferred from the content of the messages that the messages amounted to impermissible [7] contact that would cause a reasonable person to suffer emotional distress.

Smith also notes there was no testimony identifying Smith as one of the voices on the message he concedes is threatening. While Officer Adams did not explicitly state the voice was Smith's, he testified he received the messages from Smith. The messages were played for the jurors, who were able to compare the voice on the messages where Smith identified himself with the voices on the message where he did not. The jury could reasonably have inferred from the evidence before it that the threatening message came from Smith. There was ample evidence to support Smith's stalking conviction.[8]

Finally, Smith asserts the evidence was insufficient to support his conviction of criminal recklessness. To convict Smith of criminal recklessness, the State was obliged to prove beyond a reasonable doubt he: 1) recklessly; 2) performed an act that created a substantial risk of bodily injury to another person; 3) while armed with a deadly weapon. *Woods v. State,* 768 N.E.2d 1024, 1027 (Ind.Ct.App.2002); Ind.Code § 35–42–2–2(b). The jury heard testimony from Aguirre and Chivington that Smith was waving a gun out the window as he drove past Aguirre's house. They heard a bang-

ing noise and Aguirre saw smoke from the area where the noise originated. One neighbor saw Smith shoot the gun and other neighbors heard shots. Smith characterizes the testimony of the witness who saw Smith shoot the gun as "so contradicted by the other witnesses that it cannot have sufficient probative value to sustain a conviction." (Br. of Defendant–Appellant at 20.) We decline his invitation to reweigh the evidence and find there was ample evidence to support the criminal recklessness conviction.

## CONCLUSION

The trial court did not abuse its discretion in continuing Smith's trial in order to accommodate a State's witness. Smith's stalking conviction was supported by evidence he left threatening voicemail messages, and there was sufficient evidence to support his convictions of stalking, intimidation and criminal recklessness. We affirm the trial court.

Affirmed.

DARDEN, J., and BARNES, J., concur.

---

**7.** Smith asserts, without explanation or citation to authority, that the other messages are "protected speech under the First Amendment to the United States Constitution." (Br. of Defendant–Appellant at 17.) Ind. Appellate Rule 46(A)(8) requires that the appellant support each contention with an argument, including citations to legal authorities, statutes, and the record for support. Failure to present a cogent argument constitutes a waiver of that issue for appellate review. *Hollowell v. State,* 707 N.E.2d 1014, 1025 (Ind.Ct.App.

1999). We therefore decline to address Smith's First Amendment assertion.

**8.** Smith asserts the evidence is insufficient to support the intimidation conviction for the same reason, i.e., that there "would not be a sufficient legal connection drawn between the voices heard on the tape and Defendant Smith to justify a conviction." (Br. of Defendant–Appellant at 19.) As explained above, the evidence supports Smith's intimidation conviction.