**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 31 2014, 10:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ZACHARY J. STOCK**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**KATHLEEN M. MEEK**
**JUSTIN T. BOWEN**
Bowen & Associates, LLC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

<table>
<tr><td>M.D.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>   Appellant-Respondent,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>      vs.</td><td>)</td><td>No. 29A05-1404-PO-185</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>R.M.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>   Appellee-Petitioner.</td><td>)</td><td></td></tr>
</table>

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Gail Z. Bardach, Judge
Cause No. 29D06-1308-PO-7846

**October 31, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

M.D. appeals the trial court's order granting R.M. request for an order of protection, arguing that the evidence is insufficient. Finding sufficient evidence to support the protective order, we affirm.

FACTS

M.D. and R.M. entered into a romantic relationship in June 2011, and in June 2012, M.D. moved in with R.M. Their relationship was tumultuous, and M.D. moved out of their shared residence twice before the relationship ended for good.

In August 2013, after the couple had broken up four or five times, R.M. decided that he wanted the relationship to come to a final and complete end. On August 14, 2013, while M.D. was at work, R.M. moved his essential items out of the residence. He chose to do so while M.D. was at work because her reactions to the earlier breakups had left him scared and shaken. He decided, however, to return to the residence to explain the situation to M.D.

When R.M. returned to the residence, he purposefully rode his bicycle to thwart any effort by M.D. to follow him after he left the residence, as she had done in the past. R.M. and M.D. spoke for approximately two to three hours. M.D. attempted to keep him at the residence by telling him she had his phone, but when he realized he had his phone in his possession, he hurriedly "ran to his bike" and began "pedaling away." Tr. p. 35. M.D. got into her vehicle and began chasing R.M. R.M. heard "the engine revving very fast" behind him and looked over his shoulder, discovering that "her car had jumped up onto the curb behind where [he] was." Id. at 36-37. R.M. believed that M.D. was trying

2

to kill him. Eventually, R.M. was able to evade M.D. and got away without further incident.

Within thirty minutes, M.D. began calling, texting, and emailing R.M. The calls, texts, and emails continued into the next day. On August 16, 2013, M.D. sent R.M. a fourteen-page, single-spaced email, invoking God and threatening that R.M. would "go down in a fiery blaze for going against God" and warning R.M. to "remember God will punish you . . . He might just be using this situation for me to be the one to start to unleash that punishment." Tr. Ex. 3. R.M. felt scared and threatened by M.D.'s email and other communications.

On August 17, 2013, R.M. attended a men's Bible study group at his church. As he exited the church, he found M.D. waiting for him in a church pew. R.M. "felt as white as a ghost" and "focused on the [exit] door" and "walked straight to the [exit] door." Tr. p. 39. As R.M. passed M.D., he told her that he did not want to talk with her and asked her to leave him alone. He did not pause or hesitate and continued walking towards his vehicle. M.D. followed R.M. and ran alongside him as he walked hurriedly to his vehicle. R.M. entered his vehicle and attempted to close his door, but M.D. prevented him from closing the door by wedging herself between the truck and the open door. R.M. started the engine and M.D. grabbed the vehicle's back door handle, opened the door, and dove into the back seat of the vehicle. M.D. refused to exit the vehicle until two men from the Bible study group approached the vehicle and coaxed M.D. to get out. Throughout the incident, R.M. was frightened of M.D. and what she planned to do.

3

M.D. continued to email R.M.  On August 18, 2013, she sent him a three-page single-spaced email, telling R.M. that "[y]our punishment will be far worse than the way you have punished me . . . ."  Tr. Ex. 4.  On August 20, 2013, she sent R.M. another three-page single-spaced email, warning R.M. that "[y]ou will be confronted very soon, and your life is taking a turn for the worse . . . Satan knows how to use you, and destroy everything good God blesses in your life."  Tr. Ex. 5.

In addition to the eight or nine emails, countless texts messages, and multiple phone calls to R.M., M.D. also began to email R.M.'s ex-wife, mother, and adult daughter.  M.D. had no prior relationship with any of those individuals.

On August 20, 2013, R.M. filed a petition for an ex parte order of protection.  The trial court granted that the following day.  After several continuances, the trial court held a hearing on the petition on March 31, 2014, and at the conclusion of the hearing the trial court ruled that the order of protection "will remain in full force and effect until expiration or further order of the Court."  Appellant's App. p. 6.  M.D. now appeals.

DISCUSSION AND DECISION

The sole argument M.D. raises on appeal is that the evidence is insufficient to support the order of protection.  In reviewing the sufficiency of the evidence supporting an order of protection, we neither reweigh the evidence nor assess witness credibility. Tisdial v. Young, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010).  Instead, we will consider only the probative evidence and reasonable inferences that may be drawn therefrom that support the trial court's judgment.  Id.

4

Under the Indiana Civil Protection Order Act, a court may enter an order for protection upon a finding that domestic violence has occurred or a person is a victim of stalking. Ind. Code § 34-26-5-2. "Stalking" is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. "Harassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2. "Impermissible contact" includes, but is not limited to, "knowingly or intentionally following or pursuing the victim." I.C. § 35-45-10-3. The petitioner seeking an order of protection bears the burden of establishing the elements by a preponderance of the evidence. Mysliwy v. Mysliwy, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011).

The only portions of the above elements that M.D. challenges on appeal are (1) whether her conduct would make a reasonable person feel terrorized, frightened, intimidated, or threatened, and (2) whether her conduct constitutes harassment.

The record reveals that during the six days following their breakup, M.D. engaged in the following conduct: (1) she chased R.M., who was riding a bicycle, while she was driving a vehicle, at one point driving up onto the curb directly behind him; (2) she showed up, uninvited, at a Bible study session, ignored his request to leave him alone,

and prevented him from driving away by wedging herself in his vehicle door and then diving into the back seat of his vehicle; (3) she repeatedly called, texted, and emailed him, ignoring his requests to leave him alone; (4) she composed and sent lengthy emails that, among other things, warned him that he would "go down in a fiery blaze for going against God," that "God will punish you" and she might "be the one to start to unleash that punishment," and that "[y]our punishment will be far worse than the way you have punished me[.]" Tr. Ex. 3, 4, 6. Finally, after repeatedly ignoring R.M.'s requests to cease contact and unequivocal statement that their relationship was over, she proceeded to contact his ex-wife, mother, and daughter.

We find this evidence sufficient to support a conclusion that M.D.'s conduct would make a reasonable person feel terrorized, frightened, intimidated, or threatened. That she did not make any direct threats is of no moment. See Smith v. State, 802 N.E.2d 948, 954 (Ind. Ct. App. 2004) (holding that direct threats are not necessary to support a stalking conviction). M.D. ignored R.M.'s repeated requests to leave him alone and to stop contacting him. She twice invaded his personal space in a threatening manner. She sent him multiple emails warning of punishment from God. And she went beyond R.M., contacting other people in his life with whom she had no prior relationship. This conduct suffices to support the trial court's conclusion regarding its effect on a reasonable person.

As to whether the behavior constituted harassment, M.D. focuses on whether the conduct was impermissible. As noted above, however, harassment is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing

6

impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2 (emphasis added). Therefore, the statute does not require that the contact be impermissible.

Here, however, it could be concluded in any event that her contact with R.M. was impermissible. Another panel of this Court has held that "telephone messages, without more, may amount to impermissible contact sufficient to support a stalking conviction." Smith, 802 N.E.2d at 955. Here, M.D. engaged in significantly more conduct than mere telephone calls. She also emailed and texted R.M., contacted other people in his life, chased him with her vehicle, and dived into his vehicle to prevent him from driving away after she had shown up at a meeting uninvited. She engaged in this conduct despite his repeated pleas to cease and his unequivocal statement that their relationship was over. We find this evidence sufficient to support a conclusion that M.D.'s conduct would cause a reasonable person to suffer emotional distress. M.D.'s arguments to the contrary amount to a request that we reweigh evidence and assess witness credibility, which we will not do. In sum, we find the evidence sufficient to support the entry of the order of protection.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.