# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 15 2020, 7:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ian T. Keeler
Clapp Ferrucci
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David L. Guevara
James R. A. Dawson
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marylinda Gossweiler,[1] <br> *Appellant-Petitioner,* <br><br> v. <br><br> Swati Singh, <br> *Appellee-Respondent* | April 15, 2020 <br><br> Court of Appeals Case No. 19A-PO-2524 <br><br> Appeal from the Boone Superior Court <br><br> The Honorable Matthew Kincaid, Judge <br><br> Trial Court Cause No. 06D01-1908-PO-1172 |

**May, Judge.**

---

[1] 18 U.S.C. § 2265(d)(3) applies only to parties who have received an order for protection; because Gossweiler is not a party "protected under" a protective order, initials need not be used. *See Costello v. Zollman*, 51 N.E.3d 361, 362 n.1 (Ind. Ct. App. 2016), *trans. denied*.

[1] Marylinda Gossweiler appeals the trial court's denial of her petition for an order for protection. She argues the evidence leads unerringly and unmistakably to a decision opposite that reached by the trial court. We affirm.

## Facts and Procedural History

[2] At all relevant times, Gossweiler primarily lived in Colorado. She served as the managing agent of Vosetat LLC and managed property in Indiana, including a property commonly known as 3511 Willow Road in Zionsville ("Gossweiler Property"). Swati Singh and her husband lived on a property abutting the Gossweiler Property, commonly known as 3680 Willow Road ("Singh Property").

[3] The Gossweiler Property was encumbered by an easement. A private road ran along the easement on the Gossweiler Property near the property line dividing the Gossweiler Property from the Singh Property. The prior owners of the Singh Property erected a gate on the private road in order to prohibit unauthorized vehicle access. The gate required a code in order to open. Gossweiler was attempting to sell the Gossweiler Property in early 2019, but she did not have the code to open the gate. Therefore, she had her realtor attempt to contact Singh's realtor to get the code, but the effort was unsuccessful. Gossweiler attempted to contact Singh's realtor herself, but she was also unsuccessful. So, Gossweiler decided to contact Singh and her husband directly. Gosseiler had never met or spoken with Singh and her husband before, but she found their contact information on the internet.

[4]     Gossweiler called the dental practice owned by Singh and her husband three times on June 11, 2019, and she left at least two messages. That evening, Singh called Gossweiler and left a voicemail on her phone:

> Hi, uh, we have been warned by the prior owners and other people in the area that, um, you are a lunatic and you happen to do this every time the house sells, so you looked us up and called our office today three times, and you were being ridiculous, and saying that you have an emergency. Don't ever do that again, don't call our office, don't tell us that you have an emergency. For all we care you can go to hell. Ok. Don't ever try to reach out to us. You're a creep. If you ever step foot on our property at 3680 N. Willow Road we will call the police. And we do keep guns, and I do shoot. So I will shoot you if you ever step on my property. Don't ever call us. Don't ever come to us.

(Plaintiff's Ex. 7.) Upon hearing the message, Gossweiler felt "sick." (Tr. Vol. II at 19.) She initially contacted the Denver Colorado Police Department, and then she contacted the Zionsville Police. The Zionsville Police composed an incident report.

[5]     On June 21, 2019, Gossweiler's attorney sent a letter to Singh stating that Vosetat LLC "**demands that you immediately and permanently remove the gate and do nothing to restrict my client and its agents, invitees, licensees, and contractors from accessing its Properties pursuant to the terms of the Driveway Agreement.**" (Plaintiff's Ex. 9) (emphasis in original). Singh's counsel provided the gate code to Gossweiler's counsel.

[6] In August 2019, Gossweiler visited the Gossweiler Property, and she noticed her Property adjoining the private drive was "razed." (Tr. Vol. II at 24.) Singh and her husband had hired a contractor to clear the brush on the Singh Property near the private drive. On the contractor's own initiative, he cut down foliage on Gossweiler's property. Mulberry bushes and other plants had been cut along approximately 400 yards of the drive. Gossweiler did not want this vegetation removed because she wished to maintain natural growth on the Gossweiler Property in order to preserve the "ambiance of the land." *Id*. Gossweiler contacted the Zionsville Police again, and the Police completed another incident report.

[7] Gossweiler returned to the Gossweiler Property days later with Yvette Lynn from Altum's Landscaping in order to assess the damage. Singh noticed Gossweiler and Lynn walking along the private drive. Singh went out onto her porch and yelled at Gossweiler and Lynn to identify themselves. Neither Gossweiler nor Lynn did so, and Singh walked to a distance of about thirty to forty feet away from them. Singh then paralleled their movements along the drive and videotaped them. Gossweiler returned to the Gossweiler Property with her insurance adjuster a couple of days later, and Singh watched from her house as Gossweiler and the insurance adjuster walked along the private drive.

[8] On August 9, 2019, Gossweiler filed a petition for protection order. Gossweiler's petition alleged Singh "[t]hreatened to shoot [her] with a gun. Destroyed 400 yards of [her] property. Yells at [her] when she sees [her]. Video records [her] & guests without permission." (App. Vol. II at 6.) Singh

also filed a petition for protection order under a separate cause number. The trial court held a consolidated hearing on both petitions on September 6, 2019. The trial court denied Singh's petition during the hearing, and the court took Gossweiler's petition under advisement. On October 1, 2019, the trial court issued an order denying Gossweiler's petition.

# Discussion and Decision

[9] The Indiana Civil Protection Order Act ("CPOA") provides, "A person who is or has been subjected to harassment may file a petition for an order for protection against a person who has committed repeated acts of harassment against the petitioner." Ind. Code § 34-26-5-2(b). Harassment, as defined in the criminal statutes outlawing stalking, is "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible conduct that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2. The conduct must present "a credible threat to the safety of a petitioner or a member of a petitioner's household." Ind. Code § 34-26-5-9(g). "Repeated" means "more than once." *Johnson v. State*, 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), *trans. denied*. Prior to July 1, 2019, "impermissible conduct" was defined as including, but not being limited to, "knowingly or intentionally following or pursuing the victim." Ind. Code § 35-45-10-3 (1993). Effective July 1, 2019, the definition of impermissible conduct was clarified to explicitly include following or pursuing the victim; communicating with the victim in writing, by telephone,

or through electronic means; or posting on social media. Ind. Code § 35-45-10-3 (2019).

[10] The CPOA and like statutes are meant "to prohibit actions and behavior that cross the lines of civility and safety in the workplace, at home, and in the community." *Torres v. Ind. Family & Social Services Admin.*, 905 N.E.2d 24, 30 (Ind. Ct. App. 2009). We construe the CPOA "to promote the protection and safety of all victims of harassment in a fair, prompt, and effective manner." Ind. Code § 34-26-5-1. The petitioner for an order for protection bears the burden of proof and must prove entitlement to the order by a preponderance of the evidence. *Costello v. Zollman*, 51 N.E.3d 361, 367 (Ind. Ct. App. 2016), *trans. denied*. A trial court has discretion to grant protective relief pursuant to the CPOA. *Id*.

[11] We neither reweigh the evidence nor judge the credibility of the witnesses. *Id*. "We consider only the evidence of probative value and reasonable inferences that support the judgment." *Id*. We will reverse the denial of a petition for an order of protection "only if we are convinced that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Id*. Gossweiler argues the record does not contain sufficient evidence to sustain the trial court's judgment. She contends Singh's voicemail, the destruction of vegetation on her property, Singh's actions when Gossweiler visited the Gossweiler Property, and Singh's withholding of the gate code from Gossweiler were all acts of harassment.

# 1. Voicemail Message

[12] Gossweiler argues Singh's voicemail message constitutes an act of harassment. Gossweiler likens her case to *Smith v. State*, 802 N.E.2d 948 (Ind. Ct. App. 2004). In *Smith*, the defendant told Allen County Police Officer Adams that "he would be 'looking out for him with his 7.62,' referring to the ammunition used in an assault rifle." *Id*. at 950 (internal citation omitted). The defendant then left several voicemail messages for Officer Adams and another police officer, and the State charged him with stalking. *Id*. We first held that a stalking conviction could be based on phone calls alone. *Id*. at 954. We then held that the jury could have reasonably inferred from the content of the defendant's messages that more than one message the defendant left for Officer Adams was threatening and the messages constituted impermissible conduct. *Id*. at 954-55. Gossweiler believes Singh's voicemail was equivalent to the threats the defendant made in *Smith*. Gossweiler testified the voicemail caused her distress. She repeatedly characterized Singh's voicemail as a "threat on [her] life." (Tr. Vol. II at 28-29.)

[13] However, the case at bar differs from *Smith* because Singh left one voicemail rather than the several that Smith left for Officer Adams. Also, Singh did not initiate the contact between herself and Gossweiler. We have observed that "stalking requires some evidence that the actor is the one looking for the victim." *Tisdial v. Young*, 925 N.E.2d 783, 786 (Ind. Ct. App. 2010) (holding error to grant protective order when the person seeking the order for protection initiated each encounter).

[14]     While Singh's voicemail could certainly be considered unneighborly and insulting, the core message of the voicemail was Singh's desire to stay away from Gossweiler and to have Gossweiler stay away from her. There is no evidence Singh sought out contact with Gossweiler. Rather, she left the voicemail for Gossweiler when she returned Gossweiler's call. Additionally, while Singh's husband kept a gun in the house, Singh testified that she had never fired a gun and did not own a gun. The judge could have reasonably inferred Singh's reference to shooting Gossweiler if she stepped on Singh's property did not represent a credible threat. *See Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 759 (Ind. Ct. App. 2013) (holding ex-husband's e-mails and texts to ex-wife would not cause a reasonable person to feel terrorized, frightened, intimidated, or threatened).

## 2. Removal of Vegetation

[15]     The second alleged act of harassment concerns the destruction of vegetation on the Gossweiler Property abutting the easement. A person can threaten or intimidate another by destroying property. *See Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1077 (Ind. Ct. App. 2011) (holding ex-husband's acts of causing extensive damage to ex-wife's home and clothes constituted domestic violence sufficient to enter order for protection), *trans. denied*. Gossweiler testified that she felt "[s]ick" upon seeing the removed brush, and she saw it as an "act of aggression." (Tr. Vol. II at 27.)

[16]     However, "the fact finder is best positioned to judge the credibility of [the] witnesses, is free to credit or discredit testimony, and weigh conflicting

evidence." *Tharp v. State*, 942 N.E.2d 814, 816 (Ind. 2011). Here, Singh testified that she did not direct her landscaper to remove the vegetation. The landscaper did so on his own initiative. During the hearing, the trial court stated that the incident with "the brush is not harassment. It may have been improper, it may have been unlawful, it may have been trespass, it may be negligence, it is not harassment." (Tr. Vol. II at 124.) Singh's testimony supports the trial court's finding. *See Costello*, 51 N.E.3d at 367 (holding evidence did not lead unerringly and unmistakably to a decision opposite that of the trial court because the respondent's testimony supported trial court's decision).

### 3. Gossweiler's Visits with Landscaper and Insurance Adjuster

[17]     Gossweiler's third and fourth allegations of harassment concern when Singh watched her during her visits to the Gossweiler Property. Gossweiler argues Singh's actions of asking Gossweiler and Lynn to identify themselves, following them as they walked along the private road, and videotaping them amount to stalking. She contends Singh's behavior was equivalent to the behavior of the defendant in the case of *Sandleben v. State*, 29 N.E.3d 126 (Ind. Ct. App. 2015). In *Sandleben*, the defendant followed a thirteen-year-old girl around a Target store and surreptitiously videotaped her. *Id*. at 130. Approximately nine months later, the defendant followed and videotaped the thirteen-year-old girl again as she and her family shopped in a Michaels store. *Id*. at 131. He would sometimes get as close as arms-length to the girl, and he did not appear to be

shopping. *Id*. at 131-32. We held the State presented sufficient evidence to sustain the defendant's conviction for stalking because he intentionally followed the young girl, making the young girl feel threatened. *Id*. at 132.

[18] We deem the comparison to *Sandleben* inapposite. A stranger following a young girl around two stores while not shopping at either store raises the specter that the stranger may kidnap or sexually abuse the young girl. The same danger is simply not present when a neighbor who remains on her own property follows, videotapes, and asks people walking along the edge of her property to identify themselves. Gossweiler's argument is another request for us to reweigh the evidence, which we will not do. *See Andrews v. Ivie*, 956 N.E.2d 720, 723-24 (Ind. Ct. App. 2011) (refusing appellant's requests to reweigh the evidence).

[19] Gossweiler also argues Singh's act of watching Gossweiler and her insurance adjuster as they walked along the Gossweiler Property was an incident of harassment. Gossweiler testified that she thought Singh videotaped her and the insurance adjuster while they were walking along the Gossweiler Property. Singh testified she remained in her house while Gossweiler and the insurance adjuster toured the property and that, while she did watch them, she did not videotape them. Nonetheless, even if Singh videotaped Gossweiler and the insurance adjuster, such action does not unerringly and unmistakably amount to harassment. *See Sandelben*, 29 N.E.3d at 133 ("First, it was not Sandleben's act of videotaping that formed the basis for the stalking charge that he claims

unconstitutionally restricted his right to speak. Rather, his intentional, repeated acts of harassing A.S. by following her were the basis for the stalking charge.").

## 4. Gate Code

[20] On appeal, Gossweiler alleges Singh's months-long delay in providing her with the gate code constituted a fifth act of harassment. However, withholding a gate code does not present "a credible threat to the safety of a petitioner or a member of a petitioner's household." Ind. Code § 34-26-5-9(g). Further, it is not impermissible contact because it does not involve directing communications toward someone or following someone. *See* Ind. Code § 35-45-10-3. We interpret an unambiguous statute according to the plain and obvious meaning of the words in the statute. *Datzek v. State*, 838 N.E.2d 1149, 1155 (Ind. Ct. App. 2005) *reh'g denied*, *trans. denied*. Here, the statutes are unambiguous, and their plain language indicates that the delay in Singh giving Gossweiler the gate access code does not amount to an act of harassment.

[21] At the conclusion of the hearing, the trial court stated:

> So, from the bench I am going to order that [Singh] cause to be provided to [Gossweiler] at all times the access code to the gate. That is an order from the bench here. I am going to take the remainder of this issue under advisement as to whether or not a protective order should be issued.

(Tr. Vol. II at 154.) Gossweiler encourages us to remand the case because the trial court's written order did not incorporate the order from the bench that Singh always keep Gossweiler apprised of the gate code. Similarly, Singh

argues the case should be remanded with instructions for the trial court to vacate the above order from the bench.

[22] However, we find remand unnecessary. The CPOA gives the trial court authority to fashion relief when granting an order for protection, but it does not give the trial court authority to both grant relief to a petitioner and deny the petition. Ind. Code § 34-26-5-9(d) ("A court may grant the following relief . . . in an order for protection or in a modification of an order for protection . . ."); Ind. Code § 34-26-5-9(g) ("Upon a showing of domestic or family violence or harassment by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence."). But here, there is a seeming conflict between the court's order from the bench and the written order denying Gossweiler's petition for an order for protection.

[23] When a trial court's written and oral orders conflict, we try to discern the trial court's intent. *See Walker v. State*, 932 N.E.2d 733, 738 (Ind. Ct. App. 2010) ("When oral and written sentencing statements conflict, we examine them together to discern the intent of the sentencing court."), *reh'g denied*. The trial court determined that Gossweiler did not meet the statutory requirements for issuance of an order for protection. (*See* App. Vol. II at 5) ("The Petitioner has not shown, by a preponderance of the evidence, that harassment has occurred sufficient to justify the issuance of an Order for Protection."). Therefore, the court's intention was not to grant Gossweiler relief. The trial court's directive that Singh keep Gossweiler apprised of the gate access code was a suggestion rather than an enforceable order of the court. *See Dowell v. State*, 873 N.E.2d 59,

(Ind. 2007) (holding defendant was to serve sentence announced in written order even though it conflicted with oral sentencing statement).[2]

# Conclusion

The evidence supports the trial court's determination that Gossweiler failed to prove harassment by a preponderance of the evidence. The trial court could reasonably conclude that Singh's voicemail did not pose a credible threat. Also, the record supports the inference that Singh's conduct while Gossweiler visited the Gossweiler Property with her landscaper and with her insurance adjuster was the action of a vigilant neighbor rather than harassment. Additionally, the destruction of plants on Gossweiler's property was done by an independent contractor and not at Singh's direction. Gossweiler's allegation regarding Singh's failure to disclose the gate code does not qualify as harassment pursuant to the plain language of the governing statutes. Therefore, we affirm the trial court.

Affirmed.

Robb, J., and Vaidik, J., concur.

---

[2] Nonetheless, we trust there will not be an issue in the future with Singh providing Gossweiler with the gate access code because Singh avers in her brief that she "has no problem" providing the code to Gossweiler. (Appellee's Br. at 15.)