Donald D. **VANHORN**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 84A01–0711–CR–505.

Court of Appeals of Indiana.

July 15, 2008.

Transfer Denied Sept. 23, 2008.

John A. Kesler II, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Donald D. VanHorn appeals his conviction for class D felony stalking. We reverse.

### Issue

We address the following dispositive issue: Whether the evidence is sufficient to support VanHorn's conviction.[1]

---

1. Because we conclude that the evidence is insufficient and reverse VanHorn's conviction, we need not review his claims that the trial court abused its discretion in excluding certain testimony and in refusing his tendered jury instructions and giving another instruction.

### Facts and Procedural History

The evidence most favorable to the verdict follows. Robert Franks lived on South 11th Street in Terre Haute. Franks met VanHorn when Franks worked at Commercial Radio Service. VanHorn had been a regular customer there. Sometime in mid-January 2007, Franks' wife saw a black SUV park on the opposite side of the street just north of their house, but no one got out of the car. Although the vehicle was parked on the northbound side of the road, it was facing south toward Franks' house. She informed Franks.

On January 18, 2007, Franks noticed a black SUV parked in the same place. Franks got his binoculars and saw someone in the vehicle looking toward his house. Franks suspected that the person was VanHorn. Frank took photographs of the vehicle. As the vehicle pulled away, Franks saw that it had a Fraternal Order of Police ("FOP") sticker on its license plate. He called a friend to ask whether VanHorn had a black SUV with an FOP sticker, and the friend answered affirmatively. Franks felt alarmed, upset, and violated.[2] Tr. at 147. He called the police.

Officer James Jones came to Franks' residence to discuss the incident. Franks gave Officer Jones copies of the photographs and made a harassment complaint against VanHorn. Officer Jones observed that Franks was scared and frantic.

On January 19, 2007, Assistant Police Chief Bill Berghem also spoke to Franks regarding the incident. Chief Berghem noticed that Franks was frantic, nervous, and fearful. He gave Franks his cell

---

2. When asked at trial why he was frightened of VanHorn, Franks replied, "Just from hearsay, from other people." Tr. at 157. No other explanation as to why Franks would feel frightened of VanHorn was offered.

phone number. On January 22, 2007, Franks called Chief Berghem to report that VanHorn was parked across the street and was watching him with binoculars. Franks called again on January 27, 2007, with the same report.

On February 2, 2007, Chief Berghem obtained a warrant for VanHorn's arrest. Franks called in to report that VanHorn was parked near his house in a gold Mercedes. Chief Berghem responded to Franks' call and located VanHorn in a gold Mercedes about one block from Franks' house. He arrested VanHorn and recovered a pair of binoculars from the front seat of the car.

On that date, the State charged VanHorn with class D felony stalking. Appellant's App. at 19. On August 17, 2007, a jury found VanHorn guilty as charged. The trial court imposed a three-year suspended sentence, with three years' formal probation and six months' home detention. VanHorn appeals.

### Discussion and Decision

VanHorn argues that the evidence is insufficient to support his stalking conviction. In reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess the credibility of the witnesses. *Kien v. State,* 782 N.E.2d 398, 407 (Ind.Ct.App.2003), *trans. denied.* We consider only the evidence most favorable to the verdict and reasonable inferences drawn therefrom, and we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

To establish that VanHorn committed stalking as a class D felony, *see* Indiana Code Section 35–45–10–5(a), the State had to prove beyond a reasonable doubt that he (1) knowingly or intentionally (2) engaged in a course of conduct involving repeated or continuing harassment of the victim, (3) that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened, and (4) that actually caused the victim to feel terrorized, frightened, intimidated, or threatened. *See* Ind. Code § 35–45–10–1 (defining "stalk"). Stalking does not include statutorily or constitutionally protected activity. *Id.*

" 'Harassment' means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind.Code § 35–45–10–2.[3] "Harassment does not include statutorily or constitutionally protected activity, such as lawful picketing pursuant to labor disputes or lawful employer-related activities pursuant to labor disputes." *Id.* " 'Impermissible contact' includes but is not limited to knowingly or intentionally following or pursuing the victim." Ind.

---

3. This definition of harassment is separate from the offense of harassment defined in Indiana Code Section 35–45–2–2, which provides,

   (a) A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:

     (1) makes a telephone call, whether or not a conversation ensues;

     (2) communicates with a person by telegraph, mail, or other form of written communication;

     (3) transmits an obscene message, or indecent or profane words, on a Citizens Radio Service channel; or

     (4) uses a computer network . . . or other form of electronic communication to:

     (A) communicate with a person; or

     (B) transmit an obscene message or indecent or profane words to a person; commits harassment, a Class B misdemeanor.

Code § 35–45–10–3.[4]

Specifically, VanHorn asserts that the State failed to establish that his conduct constituted "harassment" of or "impermissible contact" with Franks. VanHorn observes that the complained-of conduct merely consists of parking near Franks' house on four separate occasions and looking at Franks' house through binoculars on two of those occasions. He points out that he made no actual physical contact with Franks and that he made no telephone calls, left no notes, or at any time stepped onto Franks' property. Therefore, he argues, his conduct does not constitute contact, let alone meet the legal definition of "impermissible contact."

VanHorn presents an issue of first impression. In fact, we have been presented with few opportunities to examine the parameters of "harassment" and "impermissible contact." In *Smith v. State*, 802 N.E.2d 948 (Ind.Ct.App.2004), we were asked for the first time to determine whether telephone calls alone could support a conviction for stalking. The defendant there made eight or nine telephone calls to the police officer who arrested him for public intoxication. The phone calls included obscenities and threats on the officer's life. Later, the defendant encountered another officer who told him that he would be charged with intimidation and harassment if he did not stop calling. The defendant then began leaving threatening voicemail messages for that officer. On appeal, the defendant argued that the statutory definitions appeared to require some physical contact between the defendant and the victim, and therefore the telephone calls could not constitute harassment. We disagreed, noting that other jurisdictions had consistently held that telephone calls alone were a course of conduct that could constitute harassment. *Id.* at 953–54.

Unfortunately, *Smith* is of little assistance. The *Smith* court determined only that "contact" was not limited to physical contact. The term "contact" is not statutorily defined. Undefined words are given their plain, ordinary and usual meaning. *Redden v. State*, 850 N.E.2d 451, 463 (Ind. Ct.App.2006), *trans. denied.* "In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries." *Id.* Contact is defined as "an establishing of communication with someone or an observing or receiving of a significant signal from a person or object." *Merriam–Webster's On-line Dictionary*, http://www.merriam-webster.com/dictionary/contact (last visited June 10, 2008). Telephone calls clearly constitute contact. In addition, telephone calls impinge on the recipient's zone of personal privacy, access to which the recipient has every right to deny or grant permission. When a person continues to call without the recipient's consent or in

---

4. The charging information states that "between January 17, 2007 to and including January 27, 2007 in Vigo County, State of Indiana, Donald D. VanHorn did then and there stalk Bob Franks, in violation of I.C. 35–45–10–5(a)." *Appellant's App. at 20.* "A defendant in a criminal trial is entitled to be informed specifically of the crime or crimes with which he is charged so that he may be able to intelligently prepare a defense." *Dorsey v. State*, 254 Ind. 409, 413, 260 N.E.2d 800, 802–03 (1970). Indiana Code Section 35–34–1–2 requires the charging information or indictment to "set forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition." While we have previously rejected a vagueness challenge to the stalking statutes, *Johnson v. State*, 648 N.E.2d 666, 670 (Ind.Ct. App.1995), the charging information here does not include the nature and elements of the offense and does little to inform VanHorn of the conduct with which he is charged. VanHorn did not challenge the sufficiency of the charging information below.

disregard of the recipient's expressed wish that contact be discontinued, telephone calls are clearly "impermissible contact."

In the present case, there are valid questions as to whether VanHorn's conduct was "impermissible" and whether it constituted "contact." While we ultimately do not determine whether VanHorn's conduct was "contact," we find guidance in *Waldon v. State*, 684 N.E.2d 206 (Ind.Ct. App.1997), *trans. denied*, in determining that VanHorn's conduct was not "impermissible." In *Waldon*, we upheld a conviction for stalking in which the defendant engaged in conduct somewhat similar to VanHorn's. The victim saw Waldon six times over the course of eleven months: five times near the dance studio where she worked (once peering at her through the fence) and once in the parking lot of the hospital where she worked. However, in *Waldon*, the defendant and the victim had divorced and stipulated to a mutual restraining order. Therefore, it had already been established that any contact between the defendant and the victim was impermissible. The issue in that case was not whether the defendant's actions constituted impermissible contact, but whether the evidence was sufficient to establish that the victim was actually terrorized, intimidated, or threatened by his conduct. The *Waldon* court held that it was. *Id.* at 208.

Unlike Waldon, VanHorn had no notice of the impermissibility of his conduct. He was parked on a city street. The freedom to park on a city street is generally outside an individual homeowner's authority to permit or deny. The freedom to be on a public street is one of the personal liberties guaranteed by the federal constitution:

> [A]s the United States recognizes, the freedom to loiter for innocent purposes is part of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment. We have expressly identified this "right to remove from one place to another according to inclination" as "an attribute of personal liberty" protected by the Constitution. *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900); *see also Papachristou v. Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage" *Kent v. Dulles*, 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), or the right to move "to whatsoever place one's own inclination may direct" identified in Blackstone's Commentaries. 1 W. Blackstone, Commentaries on the Laws of England 130 (1765).

*City of Chicago v. Morales*, 527 U.S. 41, 53–54, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (footnotes omitted); *see also Kent*, 357 U.S. at 125, 78 S.Ct. 1113 ("The right to travel is a part of the liberty of which the citizen cannot be deprived without due process of law under the 5th Amendment."). We observe that statutorily or constitutionally protected conduct is specifically exempted from the definition of harassment. Ind.Code § 35–45–10–2. If being on a city street is found to be "impermissible" merely because an individual homeowner did not grant permission, then the victim has been improperly granted power over the defendant that the victim does not possess.

We think that when a defendant's conduct in a public place where the defendant has a lawful right to be, and that conduct alone, is alleged to constitute harassment, the accused's due process rights must be safeguarded. In other words, when the government prohibits an individual from engaging in otherwise lawful conduct, it is

important to provide the accused with notice and an opportunity to be heard. Judge Barteau's dissent in *Waldon* highlights our concerns:

> In this case, there was no evidence to support a finding that Waldon intended to harass Majors. Six sightings of an ex-husband in public places during a one-year period do not amount to harassment. There is nothing in the record which would indicate that the six times Majors observed Waldon were anything but chance or coincidental encounters. In three of those encounters, there is no evidence that Waldon even realized he was involved in an encounter. While an individual might dislike a former spouse or might be afraid to be in the vicinity of a former spouse, that person's subjective reasons for wishing that the former spouse be elsewhere

cannot transform the former spouse's innocent activities into behavior sufficient to support a criminal conviction.

684 N.E.2d at 210 (Barteau, J., dissenting).

The issuance of a protective order pursuant to Indiana Code Section 34–26–5 would address our concerns by providing notice to the individual, an opportunity to be heard, and, where the issuance of a protective order is justified, a clear statement that his or her conduct is impermissible.[5] No protective order was sought in this case.[6]

We do not mean to suggest that no circumstances exist in which only public sightings may constitute harassment or impermissible contact, but in this case nothing occurred that would remotely indicate to VanHorn that his conduct was impermissible.[7] The fact that VanHorn was

---

**5.** The Indiana Civil Protection Order Act ("CPOA") authorizes "[a] person who is or has been a victim of domestic or family violence" to file "a petition for an order of protection against," *inter alia*, "a ... person who has committed stalking under I.C. 35–45–10–5[.]" Ind.Code § 34–26–5–2. "Domestic or family violence" includes stalking as defined in Indiana Code Section 35–45–10–5. Ind.Code § 31–9–2–42. "There is no requirement that the alleged stalking be committed by a family or household member." *Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1161 (Ind.Ct.App.2003) (citing Ind.Code § 34–26–5–1). The petition must be verified and under oath under Trial Rule 11. Ind.Code § 34–26–5–3(e). Further, Indiana Code Section 34–26–5–9(f) provides,

> A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.

The court may issue an order upon notice and hearing. Ind.Code § 34–26–5–9(a). The court may also issue an ex parte order without notice or a hearing but, depending upon the relief ordered, is required to set a date for a hearing. Ind.Code § 34–26–5–10. In other instances, a hearing must be held upon request of either party within thirty days after service of the order. *Id.* The relief the trial court may grant includes ordering the respondent to stay away from the residence, school, or place of employment of the petitioner or a specified place frequented by the petitioner. Ind.Code § 34–26–5–9. A person who knowingly or intentionally violates a protective order issued under the CPOA commits invasion of privacy, a class A misdemeanor. Ind.Code § 35–46–1–15.1.

**6.** We observe that a person who stalks a victim where a protective order was issued to protect that victim and the person had actual notice of the order commits class C felony stalking. Ind.Code § 35–45–10–5(b).

**7.** To the extent the dissent suggests that our decision requires "official proof" of impermissibility, we respectfully disagree. "Harassment" is defined as repeated or continuing *impermissible* contact. Ind.Code § 35–45–10–2 (emphasis added). Here, VanHorn was on a public street where he had a right to be and was convicted of stalking

looking in the direction of Franks' house with binoculars does not alter our analysis. This type of conduct falls more within the ambit of voyeurism, although we are not suggesting that the evidence in the record here would support a conviction for that offense. *See* Ind.Code § 35–45–4–5 (providing, in part, that a person who peeps, or goes upon the land of another with the intent to peep into an occupied dwelling of another person, or who peeps into an area where an occupant reasonably can be expected to disrobe, without the consent of the other person, commits voyeurism, a class B misdemeanor). Accordingly, we conclude that the evidence was insufficient to support VanHorn's conviction for stalking.

Reversed.

BARNES, J., concurs.

BRADFORD, J., dissents with opinion.

BRADFORD, Judge, dissenting.

In my view, otherwise lawful contact may be "impermissible" and satisfy the "harassment" element of stalking without being defined as such by a protective order or other official means providing notice and an opportunity to be heard. I understand the majority's reluctance to find apparently "lawful" conduct unlawful, but I am confident that the jury system is an adequate safeguard for preventing unfair convictions for lawful behavior. Indeed, otherwise lawful behavior only constitutes "stalking" if the jury, or factfinder, concludes beyond a reasonable doubt that it would cause a reasonable person to feel terrorized.

Here, under the circumstances, the jury determined that VanHorn's repeated presence on a public street constituted stalking. As I see it, the majority's view that

the victim must buttress his allegation with documentation that the defendant's contact was officially "impermissible" is overly burdensome and does not comport with the spirit of the statute. Indiana Code section 35–45–10–1, which defines "stalking," is not overly stringent, requiring only that an individual engage in repeated or continuing harassment of another person which would cause a reasonable person to feel terrorized and does, in fact, cause the other person to feel terrorized. By requiring official proof of "impermissibility" to satisfy the harassment component, the majority adds an element of proof which the crime of "stalking," as defined, does not contain.

I understand that Indiana Code sections 35–45–10–1 and –2 specifically exempt "statutorily or constitutionally protected activity" from "stalking" and "harassment," but given the statutory examples in section 35–45–10–2, which involve labor disputes, it appears that the focus of the exemption is largely on First Amendment activity. In any event, while an individual may have the constitutionally-protected freedom to stand on a public street, this freedom, as observed by the majority, requires that he have innocent purposes. Op. at 912 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 53, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)). Of course, inherent in a stalking charge is the allegation that the defendant does not have innocent purposes.

Given my confidence in the factfinder's ability to discern "stalking" from lawful activity, I would not disturb VanHorn's conviction.

---

without *any* notice that such conduct was impermissible. An equally vexing question might be what makes such otherwise lawful

conduct impermissible. To constitute stalking the conduct must cause a reasonable person to feel terrorized *and* be impermissible.