## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2016, 6:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brent A. Clemons,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 30, 2016

Court of Appeals Case No.
66A05-1604-CR-770

Appeal from the
Pulaski Superior Court

The Honorable
Patrick Blankenship, Judge

Trial Court Cause No.
66D01-1503-F5-19

**Kirsch, Judge.**

Brent A. Clemons ("Clemons") was convicted after a jury trial of two counts of stalking,[1] each as a Level 5 felony, and three counts of invasion of privacy,[2] each as a Class A misdemeanor and was sentenced to a four-year aggregate sentence. He appeals and raises several issues, which we consolidate and restate as:

> I. Whether the trial court abused its discretion when it allowed State's Exhibit J, the service history of the protective order, to be admitted into evidence; and
>
> II. Whether the State presented sufficient evidence to support Clemons's convictions.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

C.C. married Clemons in October 2013 and filed a petition for dissolution of marriage in February 2015. During C.C.'s marriage to Clemons, her teenage son, V.W., lived with her and Clemons for a time in 2014 in Starke County, Indiana. In early 2014, there was an incident where Clemons battered both C.C. and V.W. when V.W. attempted to protect his mother. Clemons moved out of the house for a period of time, but moved back in October 2014. In February 2015, Clemons put a knife to C.C.'s throat and threatened to kill her.

---

[1] *See* Ind. Code § 35-45-10-5(a), (b)(2)(D).

[2] *See* Ind. Code § 35-46-1-15.1(2).

C.C. tried to leave, and Clemons smashed the windows of her vehicle with a baseball bat and took her keys and cell phone. Clemons hit C.C. in the face with his fist, and she feared for her life. C.C. moved out of the home she had shared with Clemons and moved in with her ex-husband and V.W. in Pulaski County, Indiana.

[4] After this incident of battery, C.C. obtained an "Ex Parte Order for Protection" ("the Protective Order") against Clemons issued under Cause No. 75C01-1503-PO-18. *State's Ex*. D. The Protective Order was issued on March 3, 2015 and was personally served on Clemons on March 4, 2015. *Tr*. at 190; *State's Exs*. D, J. The Protective Order prohibited Clemons from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with C.C. and was valid for two years. *State's Ex*. D. C.C. testified that she included V.W. on the Protective Order "because [she] was afraid for him" and he had been a victim of Clemons's domestic violence. *Tr*. at 113.

[5] While C.C. was staying at the home of her ex-husband, which was in a town approximately twenty minutes away from where Clemons lived, Clemons drove by the home twice, once in March 2015 and once in April 2015. Clemons had no legitimate reason for driving past as he did not live or work nearby. One of the times he drove past, C.C. was outside, and a car in which Clemons was a passenger drove by slowly, and Clemons stared at her, which frightened C.C.

[6] On March 9, 2015, at approximately 6:50 p.m., Clemons sent a text message to V.W.'s phone that said, "there you go c[.c.], the same guy you told me was a better love maker than me has your dog and you now have everything, thnx for the humiliation and be proud." *State's Ex.* E; *Tr.* at 125. V.W. showed the text message to C.C., and the police were called. Winamac Police Department Officer Tyler Campbell ("Officer Campbell") responded and saw the Protective Order, which prevented Clemons "from having any direct or indirect contact [with] either [V.W.] or [C.C.]." *Tr.* at 169. Officer Campbell contacted dispatch to make sure that the Protective Order had been served on Clemons. After viewing the text message, Officer Campbell called the number from which the text message was sent and verified that it was Clemons's number. Officer Campbell left a voicemail for Clemons informing him of the Protective Order and telling him "he needed to cease any further contact." *Id.* at 172.

[7] Later on the night of March 9, at approximately 11:37 p.m., Clemons sent another text message to V.W.'s phone that stated, "You are a piece of shot who're. Duck you for this. Duck you [C.C.]." *State's Ex.* F; *Tr.* at 126-27. V.W. again showed the message to C.C. Sometime after, another text message was sent to V.W.'s phone by Clemons. This message consisted of a photo of Clemons "flipping [them] off." *State's Ex.* G; *Tr.* at 127. On March 15, 2015, at approximately 4:41 p.m., Clemons again sent a message to V.W.'s phone; this message said, "[C.C.] . . . I tried to leave y'all alone but y'all want to play games I got ur number game on puncks [sic]." *State's Ex.* H; *Tr.* at 133-34. Clemons also posted a message on C.C.'s Facebook page. As a result of this

contact by Clemons, both C.C. and V.W. were scared and fearful for their safety.

[8] The State charged Clemons with two counts of stalking, one involving C.C., and the other involving V.W., which were enhanced to Level 5 felonies due to the existence of the Protective Order. Clemons was also charged with three counts of Class A misdemeanor invasion of privacy, two counts alleging violations on March 9 involving C.C. and V.W. respectively, and one count alleging a violation on March 15 involving C.C.[3] A jury trial was held, at which Clemons failed to appear, and he was tried in absentia. At trial, Clemons's counsel objected to the admission of State's Exhibit J, which was a printout of the service history of the Protective Order, and alleged an insufficient foundation was provided to qualify the exhibit as a business record. The trial court overruled the objection, and State's Exhibit J was admitted into evidence. At the conclusion of the trial, Clemons was convicted of two counts of Level 5 felony stalking and three counts of Class A misdemeanor invasion of privacy. He was sentenced to four years on each stalking conviction and one year on each invasion of privacy conviction, with all of the sentences to be served concurrent with each other for an aggregate sentence of four years executed. Clemons now appeals.

[3] The State also charged Clemons with a fourth count of Class A misdemeanor invasion of privacy alleging a violation on March 15 involving V.W., but that count was later dismissed.

# Discussion and Decision

## I. Admission of Evidence

[9] Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Jones v. State*, 982 N.E.2d 417, 421 (Ind. Ct. App. 2013) (citing *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000)), *trans. denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id*. "It is well-settled that '[t]he Court of Appeals may affirm the trial court's ruling [on the admissibility of evidence] if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court.'" *Reeves v. State*, 953 N.E.2d 665, 670 (Ind. Ct. App. 2011) (quoting *Scott v. State,* 883 N.E.2d 147, 152 (Ind. Ct. App. 2008)), *trans. denied*.

[10] Clemons argues that the trial court abused its discretion when it allowed the service history of the Protective Order, State's Exhibit J, to be admitted into evidence at trial. He claims that State's Exhibit J was hearsay and that the State failed to lay a proper foundation for the exhibit to be admitted under the business records exception to the hearsay rule. Specifically, Clemons contends that the witness who testified about State's Exhibit J was not the keeper or the custodian of the records and that there was no testimony to establish that the information contained in State's Exhibit J was imputed on a regular basis or regularly made as is required by Indiana Evidence Rule 803(6). Clemons, therefore, asserts that State's Exhibit J was not properly admitted into evidence.

[11] We need not address Clemons's hearsay argument because the service information in State's Exhibit J is cumulative of other evidence presented at trial that established that Clemons was served or notified of the Protective Order. The admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence properly admitted. *Collins v. State,* 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). Here, testimony was presented of Pulaski County Sheriff's Deputy Nicholas Bowyer ("Deputy Bowyer"), who responded to C.C.'s residence on March 15, 2015 regarding a text message sent by Clemons on that date. Deputy Bowyer testified that he took the police report on that date and confirmed that the Protective Order was valid and that it had previously been served on Clemons on March 4, 2015. *Tr.* at 193-94. Additionally, Officer Campbell testified that he called Clemons on March 9, 2015, personally notified Clemons of the Protective Order, and advised Clemons to "cease any further contact with [C.C.] or possible criminal prosecution could ensue." *Id.* at 171-72. Indiana Courts have held that proper service of an ex parte order is not required to prove that a respondent has knowledge of the order. *See Joslyn v. State,* 942 N.E.2d 809, 811-12 (Ind. 2011) ("[T]he statutes defining the crimes of stalking and invasion of privacy do not require actual service of a protective order for a conviction."). We, therefore, conclude that any error in admitting State's Exhibit J was harmless because ample other evidence was presented that demonstrated that Clemons was given notice of the Protective Order.

## II. Sufficient Evidence

[12] The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Fuentes*, 10 N.E.3d at 75. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012). As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[13] Clemons argues that the State failed to present sufficient evidence to support his convictions for two counts of Level 5 felony stalking and three counts of Class A misdemeanor invasion of privacy. In order to convict Clemons of stalking as a Level 5 felony, the State was required to prove beyond a reasonable doubt that he stalked another person, that a protective order to prevent domestic or family violence under Indiana Code chapter 34-26-5 or Indiana Code chapter 34-4-5.1 had been issued to protect the same victim from Clemons, and that Clemons had been given actual notice of the protective order. Ind. Code § 35-

45-10-5(a), (b)(2)(D). Stalk is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. In order to convict Clemons of invasion of privacy as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally violated an ex parte protective order issued under Indiana Code chapter 34-26-5. Ind. Code § 35-46-1-15.1(2).

[14] Clemons first challenges his convictions for stalking by claiming that he "was charged with violating 'a' protective order that . . . never was introduced into evidence." *Appellant's Br.* at 21. Because this was the basis of enhancing his two stalking convictions to Level 5 felonies, Clemons asserts that the evidence was insufficient to support his convictions for stalking as Level 5 felonies.

[15] In the present case, C.C. testified that she obtained the Protective Order against Clemons after an incident of domestic abuse because she was afraid of Clemons and for her life. *Tr.* at 109, 111-14. Officer Campbell testified that he saw the Protective Order on the night of March 9, 2015 after responding to the dispatch of the text messages. *Id.* at 169. Deputy Bowyer also testified that, on March 15, 2015, when he responded to C.C.'s residence, he confirmed the Protective Order was valid and that it had been served on Clemons on March 4, 2015. *Id.* at 194. Further, contrary to Clemons's claim, the Protective Order itself was admitted into evidence as State's Exhibit D. *Id.* at 114; *State's Ex.* D. The

Protective Order was an Ex Parte Order for Protection issued under the authority of Indiana Code section 34-26-5-9(b) against Clemons on March 3, 2015. *State's Ex*. D. The Protective Order was issued because C.C. had shown that domestic violence had occurred, that Clemons represented a credible threat to C.C.'s safety, and that the Protective Order was necessary to bring about the cessation of the violence or threat of violence. *Id*. Although Clemons alleges that C.C.'s testimony discussed two different protective orders, the evidence presented at trial established that State's Exhibit D was the only protective order at issue in this case and the order on which the charges were based. We conclude that sufficient evidence was presented to support the existence of a protective order to enhance stalking to a Level 5 felony.

[16] Clemons next argues that insufficient evidence was presented to support the enhancement of Count 2 stalking to a Level 5 felony and to support Count 4 invasion of privacy because the evidence did not establish that Clemons knew or was notified that the Protective Order named V.W. as a protected individual. Clemons asserts that V.W.'s name does not appear anywhere on the Protective Order and that V.W. was not mentioned as a protected person in State's Exhibit D. Clemons contends that pursuant to Indiana Code section 34-26-5-9(b), under which the Protective Order was issued, a "court may grant the following relief without notice and hearing in an ex parte order for protection . . .: (1) Enjoin a respondent from threatening to commit or committing acts of domestic or family violence against a petitioner and each designated family or

household member," and because V.W. was not designated in the Protective Order, insufficient evidence was presented. We agree.

[17] In the present case, State's Exhibit D was the Protective Order at issue, the violation of which was the subject of the charges against Clemons. On the face of State's Exhibit D, C.C. is clearly listed as the Petitioner, and Clemons is clearly prohibited from having contact with C.C. *State's Ex.* D. However, nowhere in State's Exhibit D does V.W.'s name appear. *Id.* Under the heading Findings, it states, "This order does/does not protect an intimate partner or child"; however, neither "does" nor "does not" is circled. *Id.* Under the heading Order, paragraph 1 is checked and provides, "The Respondent is hereby enjoined from threatening to commit or committing acts of domestic or family violence, stalking, or a sex offense against the Petitioner and the following designated family or household members, if any"; the lines following are blank and do not contain V.W.'s or any other name. *Id.*

[18] Under Indiana Code subsections 35-45-10-5(a), (b)(2)(D), in order for the crime of stalking to be elevated to a Level 5 felony, the State is required to prove beyond a reasonable doubt that a protective order to prevent domestic or family violence under Indiana Code chapter 34-26-5 or Indiana Code chapter 34-4-5.1 had been issued to protect the victim from the defendant and that the defendant had been given *actual notice* of the protective order. Under Indiana Code section 35-46-1-15.1(2), in order to convict a defendant of invasion of privacy as a Class A misdemeanor, the State is required to prove beyond a reasonable doubt that the defendant *knowingly or intentionally* violated an ex parte protective order

issued under Indiana Code chapter 34-26-5. Here, although evidence was presented that Clemons was served with the Protective Order, because the Protective Order did not contain V.W.'s name as a protected person, the State did not present evidence that Clemons was given actual notice of the Protective Order as it related to V.W. or that Clemons knowingly or intentionally violated the Protective Order as to V.W.

[19]   The State contends that testimony by C.C. and Officer Campbell established that V.W. was included in the Protective Order, *tr.* at 113, 169, and was sufficient to support Clemons's convictions. However, we conclude that this testimony did not establish that Clemons was given actual notice of the Protective Order and any prohibition of contact with V.W. or that Clemons knowingly or intentionally violated the Protective Order regarding V.W. We, therefore, vacate the enhancement of Count 2 to Level 5 felony stalking, reducing it to Level 6 felony stalking, and we reverse Clemons's conviction for Count 4, Class A misdemeanor invasion of privacy.

[20]   Lastly, Clemons argues that the evidence was insufficient to support his convictions for stalking.[4] He contends that the evidence that he drove past C.C.'s residence was not sufficient to support his conviction because he was

---

[4] Although Clemons concludes his argument section with the statement, "The evidence was not sufficient to support judgment of conviction on any count, *Appellant's Br.* at 28, the text of his argument does not make any reference to his invasion of privacy convictions and only addresses his stalking convictions. We, therefore, find that he has waived any contention that his remaining invasion of privacy convictions, Counts 3 and 5, were not supported by sufficient evidence for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a).

engaged in constitutionally protected activity as he was traveling on a public road and had no control of the vehicle as he was the passenger in the car. Clemons also claims that all of the text messages were sent to V.W.'s phone, and because V.W. was not included on the Protective Order, this evidence did not support his convictions for stalking. Clemons further asserts that it was not clear on what date he posted the message to C.C.'s Facebook page, so it was not proven to be made after the Protective Order was issued.

[21] The definition of stalk is stated as, "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. The definition of stalk does not include statutorily or constitutionally protected activity. *Id.* Here, the evidence presented at trial showed that although C.C. lived in a different town that was approximately twenty minutes away from where Clemons lived, Clemons drove by the home twice, once in March 2015 and once in April 2015. Clemons had no legitimate reason for driving past as he did not live or work nearby, and one of the times he drove past, C.C. observed a car in which Clemons was a passenger drive by slowly, and Clemons stared at C.C., frightening her. Clemons's reliance on *VanHorn v. State*, 889 N.E.2d 908 (Ind. Ct. App. 2008), *trans. denied*, to support that his actions of driving on a public road are constitutionally protected is misplaced. In *VanHorn*, no protective order had been issued so the defendant had no notice of the impermissibility of

his conduct in a public place where he parked near the complainants' house and looked at their house on several occasions. *Id*. at 911-13. Here, a protective order had been issued, and Clemons had notice that he was prohibited from contacting C.C.

[22] The Protective Order prohibited Clemons from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with C.C. *State's Ex*. D. The evidence presented at trial showed that, on different days, Clemons sent multiple harassing text messages that were directed to C.C. to V.W.'s phone. Although the messages were sent to V.W.'s phone, they were clearly directed to C.C., Clemons had been explicitly prohibited from contacting C.C. both directly and indirectly. Based on this evidence, the jury could reasonably infer that Clemons was attempting to contact C.C. when he sent the text messages and, therefore, violating the Protective Order. As a result of receiving these messages and of Clemons's other behavior, both C.C. and V.W. testified that they felt threatened by and frightened of Clemons. *Tr*. at 135, 155. We conclude that sufficient evidence was presented from which a reasonable jury could find that Clemons knowingly or intentionally harassed both C.C. and V.W. in a way that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually caused them to feel terrorized, frightened, intimidated, or threatened. *See* Ind. Code § 35-45-10-1. Sufficient evidence was presented to support Clemons's convictions for Level 5 felony stalking relating to C.C. and Level 6 felony stalking relating to V.W.

[23] In conclusion, we find that even if there was an error in the admission of State's Exhibit J, it was harmless because the exhibit was merely cumulative of other evidence that was properly admitted. We conclude that sufficient evidence was presented to support the existence of a protective order to enhance the stalking of C.C. to a Level 5 felony as to Count 1; however, we find that the State presented insufficient evidence to prove that Clemons was given actual notice of the Protective Order as it related to V.W. or that Clemons knowingly or intentionally violated the Protective Order as to V.W. Further, based on the evidence presented at trial, we conclude that sufficient evidence was presented to prove that Clemons stalked both C.C. and V.W. Based on these conclusions, we vacate the enhancement of Count 2 and reduce Clemons's Level 5 felony stalking conviction to Level 6 felony stalking, and we reverse Clemons's conviction for Count 4, Class A misdemeanor invasion of privacy. We affirm all of Clemons's other convictions and remand with instructions to enter judgment consistent with this decision.

[24] Affirmed in part, reversed in part, and remanded.

May, J., and Crone, J., concur.