

FILED

Jul 25 2019, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodney W. Falls,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 25, 2019<br>Court of Appeals Case No.<br>18A-CR-2948<br>Appeal from the Kosciusko<br>Superior Court<br>The Honorable Joe V. Sutton,<br>Judge<br>Trial Court Cause No.<br>43D03-1802-F6-166 |

**Baker, Judge.**

[1] Rodney Falls appeals his conviction and the sentence imposed by the trial court for Level 6 Felony Stalking,[1] arguing that (1) the trial court erred when it refused to give his proffered jury instruction; (2) the evidence was insufficient to support his conviction; and (3) the sentence is inappropriate in light of the nature of the offense and his character. Finding no error, the evidence sufficient, and the sentence not inappropriate, we affirm.

# Facts[2]

[2] On the evening of February 13, 2018, A.G. left Valparaiso after visiting with her boyfriend. A.G. exited Interstate 65 onto U.S. Highway 30 and stopped at a red light. A.G. then saw a man later identified as Falls in the car next to hers. Falls waved at A.G., but A.G. ignored him and started to drive as soon as the light turned green. A.G. noticed that Falls immediately got behind her as she started to drive away.

[3] A.G. suspected that Falls was following her because every time she switched lanes, sped up, or slowed down, Falls did exactly the same. No matter what A.G. did, Falls mimicked her actions and stayed behind her for almost an hour to an hour and a half. A.G. realized that she was running low on gas, but she still had a long distance to drive before she returned to her school. She began

---

[1] Ind. Code § 35-45-10-5(a).

[2] We held oral argument for this case on June 20, 2019, at Trine University in Angola. We thank both parties for their stimulating discussion, and we thank the faculty at Trine and the staff of the American Legion who sponsors Boys State for their warm and generous hospitality.

calculating how long she could go before she had to stop for gas. Ultimately, she decided to do the following:

> [I]t was going to be better to try to push that then it would to stop and risk. Like I would rather risk knowing that tank is going to run out and knowing I have that opportunity to call somebody like a police officer or if I was close enough to somebody that I know would be able to handle that situation or like that was the better option for me than stopping at a place where I don't know anyone and so far away.

Tr. Vol. II p. 128. A.G. decided to drive until she got to Warsaw.

[4] After exiting U.S. Highway 30 into Warsaw, A.G. saw that Falls had followed her into town. She then drove through numerous residential streets, circling different areas and driving up and down the same lanes to see if it was just a coincidence that Falls had followed her thus far. Again, Falls mimicked her actions, drove down the same roads, and trailed closely behind her.

[5] Terrified, A.G. drove to the Warsaw Police Department to find help. A.G. parked her vehicle in the visitor's parking lot, but Falls pulled up and parked in between where A.G. was parked and the entrance to the police station. Falls waved at A.G. A.G. testified that she did not want to exit her vehicle out of fear that Falls would harm her, so she drove back to the residential streets. Again, Falls followed her. A.G. called the Warsaw Police Department to make sure it was open. After someone informed her that it was open, A.G. sped for the police station in order to lose Falls. A.G. returned, parked in the same parking

space, and quickly walked towards the front door. A.G. then saw Falls pull into the visitor's parking lot, park next to her vehicle, and wave at her again.

[6] Inside, Lynne Lafollette, the Chief's assistant at the Warsaw Police Department, and Ellen Hoffer, a clerical worker, saw A.G. walk into the station looking "nervous" and "very frightened." *Id.* at 157. Suspicious that something was not right, Lafollette buzzed A.G. into the building, even though doing so went against protocol. Hoffer notified Sergeant Lewis Fuller about what had happened, and Sergeant Fuller went to talk with and subsequently arrest Falls for stalking. Sergeant Fuller then impounded Falls's vehicle because he had been arrested and because he had parked in a handicap spot without proper signage. Sergeant Fuller conducted a search of Falls's vehicle pursuant to his arrest and found a baggie of marijuana.

[7] On February 15, 2018, the State charged Falls with one count of Level 6 felony stalking and one count of Class B misdemeanor possession of marijuana. Falls was released on bond, but on February 21, 2018, the State filed and was granted a motion to revoke bond because Falls had been arrested for criminal battery. Falls had previously been convicted of Class D felony burglary and theft/receiving stolen property, along with five other felonies.

[8] Before the end of Falls's October 30, 2018, jury trial, Falls asked the trial court to provide the jury with an instruction detailing the Fifth Amendment right to travel as a constitutionally protected activity. The instruction reads as follows:

> The right to travel is a constitutionally protected activity. The right to travel is part of the 'liberty' of which the citizen cannot be deprived without due process of law under the 5th Amendment.
>
> The right to remove from one place to another according to inclination is[] an []attribute of personal liberty protected by the Constitution.

Appellant's App. Vol. II p. 117. The State objected to the instruction as meritless and lacking in probative value. Following rebuttal, the trial court denied Falls's request to tender it as a final instruction to the jury. The jury found Falls guilty as charged.

[9] At the November 27, 2018, sentencing hearing, the trial court identified four aggravating factors: (1) Falls's criminal history; (2) his prior charges of invasion of privacy; (3) his bond/pre-trial release violation; and (4) his past violation of probation. *Id.* at 185. The trial court found no mitigating factors. *Id.* Thereafter, Falls was sentenced to consecutive sentences of thirty months for the stalking conviction and six months suspended to probation for the possession of marijuana conviction. Falls now appeals.

# Discussion and Decision

[10] Falls raises three arguments on appeal: (1) the trial court erred when it refused to give his proffered jury instruction; (2) the evidence was insufficient to support his stalking conviction; and (3) the sentence is inappropriate in light of the nature of the offense and his character.

# I. Jury Instruction

First, Falls argues that the trial court erred when it refused to give his proffered jury instruction because he wanted to assert that his actions amounted to constitutionally protected activity, a defense to the crime of stalking.

"Jury instructions are to be considered as a whole and in reference to each other, and we will not reverse the trial court's decision . . . unless the instructions as a whole mislead the jury as to the law of the case." *Walls v. State*, 993 N.E.2d 262, 268 (Ind. Ct. App. 2013). When reviewing a trial court's decision to grant or deny a request for a tendered jury instruction, we consider (1) whether the instruction correctly states the law; (2) is supported by the evidence in the record; and (3) is not covered in substance by other instructions. *Matheny v. State*, 983 N.E.2d 672, 679 (Ind. Ct. App. 2013). A defendant is entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights. *Vaughn v. State*, 13 N.E.3d 873, 884 (Ind. Ct. App. 2014).

The preliminary jury instruction Falls proffered reads as follows:

> The right to travel is a constitutionally protected activity. The right to travel is part of the 'liberty' of which the citizen cannot be deprived without due process of law under the 5th Amendment.
>
> The right to remove from one place to another according to inclination is[] an []attribute of personal liberty protected by the Constitution.

Appellant's App. Vol. II p. 117.

[14] Falls bases his argument on *VanHorn v. State*, 889 N.E.2d 908, 912 (Ind. Ct. App. 2008). In *VanHorn*, we held, in pertinent part, as follows:

> . . . The freedom to be on a public street is one of the personal liberties guaranteed by the federal constitution:
>
> > [A]s the United States recognizes, the freedom to loiter for innocent purposes is part of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment. We have expressly identified this "right to remove from one place to another according to inclination" as "an attribute of personal liberty" protected by the Constitution. *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed 186 (1900); *see also Papachristou v. Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage" *Kent v. Dulles*, 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), *or the right to move "to whatsoever place one's own inclination may direct"* . . . .

*VanHorn*, 889 N.E.2d at 912 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 53-54, 119 S.Ct. 1849, 144 L.E.2d 67 (1999)) (an internal citation omitted) (emphasis added). Stated another way, the Fifth Amendment protects a person's right to move on any public thoroughfare as he may choose. And Falls wanted to assert this right as a defense to the crime of stalking.

[15] However, the right to travel is not unlimited. *See Baxendale v. Raich*, 878 N.E.2d 1252, 1259 (Ind. 2008) (holding that "a chilling effect on travel can violate the federal Constitution, but . . . other considerations may outweigh an individual's interest in travel[]"); For example, an individual may not operate a motor

vehicle without an active driver's license, Ind. Code § 9-24-1-1, while intoxicated, Ind. Code § 9-30-5-2(a), with an open alcoholic beverage container, I.C. § 9-30-15-3, or without proper registration. Ind. Code § 9-18.1-2-3. An individual may not use public thoroughfares to transport someone to promote human sex trafficking. Ind. Code § 35-42-3.5-1.1. An individual may not forcibly kidnap and transport a child by using a vehicle. I.C. § 35-42-3-2(b)(1)(B). And an individual may not use a vehicle to recklessly kill another human being. I.C. § 35-42-1-5. More to the point, the General Assembly has passed numerous laws regarding stalking, abuse, harassment, intimidation, and impermissible contact, which inhibit a person's actions, restrict how a person may travel, preclude when a person may interact with others, and prevent a person from talking with specific individuals. *See generally* Ind. Code chs. 35-45-2, -10.

[16] Thus, while Falls's jury instruction correctly states a legal principle, it is incomplete and, therefore, erroneous. The instruction fails to include a section explaining that the constitutional right to travel is not unlimited—namely, an explanation that the criminal regulation of stalking is a valid and well-recognized exception to that right. Without a complete explanation of the constitutional right to travel and its limitations, the jury instruction Falls proffered could have confused or misled the jury. *See Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001) (holding that "[a]n instruction that tends to confuse the jury is properly rejected[]").

[17]    Therefore, we find that the trial court did not err when it rejected Falls's proffered jury instruction because it is incomplete and misstates the law relevant to Falls's case.

# II. Sufficiency of Evidence

[18]    Next, Falls argues that the evidence was insufficient to support his conviction for Level 6 felony stalking.

[19]    When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[20]    To convict Falls of Level 6 felony stalking, the State was required to prove beyond a reasonable doubt that Falls knowingly or intentionally engaged in conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually caused the victim to feel terrorized, frightened, intimidated or threatened. I.C. §§ 35-45-10-1, -5(a). "'Harassment' means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer

emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2. "'Impermissible contact' includes but is not limited to knowingly or intentionally following or pursuing the victim." I.C. § 35-45-10-3.

[21] Falls contends that the evidence was insufficient to prove that his actions were "repeated." First, it is undisputed that Falls's actions would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that his actions did, in fact, make A.G. feel terrorized, frightened, intimidated, or threatened. A.G. testified that she felt nervous after she realized that Falls had been following her for some time. Then, after Falls left U.S. Highway 30 at the same time as she did, Falls drove through the same residential areas and followed her twice to the Warsaw Police Department. And Ellen Hoffer testified that A.G. appeared "nervous" and "very frightened" when she entered the police station that night. Tr. Vol. II p. 157. What remains in dispute is whether Falls's actions constituted repeated or continuing harassment or impermissible contact.

[22] Under the totality of the circumstances present in this case, we find that Falls's actions fit the statutory definition of stalking. Even though we have defined "repeated" to mean "more than once," *Johnson v. State*, 721 N.E.2d 327, 333 (Ind. Ct. App. 1999), we do not hold that Falls had to follow A.G. a certain number of times or for a certain number of hours in order for his actions to constitute stalking. We can see that what transpired between Falls and A.G. fit well within the statutory definition of stalking, and we do not intend to

establish a bright-line test for determining when behavior becomes criminal stalking absent further guidance from the General Assembly. There is sufficient evidence to show that for hours, Falls followed A.G., sped up, slowed down, and tracked her as they were driving on interstate and highway roads. Even after the two left U.S. Highway 30, Falls continued to pursue A.G., turning down the same roads, driving on the same random paths, and even following her twice to the police station. It is apparent to us that this behavior constituted repeated or continuing harassment or impermissible contact.

[23] Moreover, in *Nicholson v. State*, our Supreme Court held that "absent an explicit time frame established by the General Assembly during which stalking can occur, *the trier of fact should determine* if the course of conduct involv[ed] repeated or continuing harassment." 963 N.E.2d 1096, 1101 (Ind. 2012) (internal quotations omitted) (emphasis added). There is no statutory definition of "repeated," so it was ultimately the jury's obligation to determine whether Falls's actions amounted to repeated or continuing harassment or impermissible contact. Therefore, we conclude that the probative evidence and all reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to convict Falls of Level 6 felony stalking beyond a reasonable doubt. In other words, the evidence is sufficient.

# III. Appropriateness

[24] Finally, Falls argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character.

[25] Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). In determining whether the sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad [of] other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). It is our job to leaven the outliers, not to achieve a perceived "correct" sentencing result. *Id.* at 1225.

[26] The maximum sentence for a Level 6 felony stalking conviction is two and one-half years, and the minimum sentence is six months. Ind. Code § 35-50-2-7(b). The advisory sentence is one year. *Id.* Here, the trial court imposed the maximum term of thirty months—exactly two and one-half years.

[27] First, as to the nature of the offense, despite the fact that Falls's actions took place over the course of one evening, he terrorized A.G., followed her every step, incessantly pursued her on public roads and throughout winding residential areas, and attempted to prevent her from seeking help at the Warsaw Police Department. Falls targeted A.G. for roughly two and one-half hours for no apparent reason. A.G. testified that Falls's behavior instilled in her a sense of dread that something worse would happen:

> I think him following me just kind of just initially caused alarm because obviously . . . all the time, like getting kidnapped or raped by random people and it was kind of that thought that was going through like if I stop I don't know if that's something that will happen to me.

Tr. Vol. II p. 127. In sum, despite the fact that Falls's actions did not take place over the course of several days or even weeks, A.G.'s testimony reinforces the disturbing and frightening nature of what Falls did and how it made her feel. Therefore, we find that the nature of Falls's offense does not render his sentence inappropriate.

[28] Next, as to Falls's character, Falls has a serious criminal record comprised of seven different felony convictions, including convictions for Class D felony burglary and theft/receiving stolen property. Additionally, Falls had previously been charged with invasion of privacy, had violated probation in the past, and violated his pre-trial release/bond period in this case when he was charged with criminal battery. Falls has made no efforts to reform his character, despite multiple opportunities for improvement after multiple run-ins with the law. Therefore, we find that Falls's character does not render his sentence inappropriate.

[29] In sum, we will not revise Falls's sentence pursuant to Indiana Appellate Rule 7(B).

The judgment of the trial court is affirmed.

Robb, J., concurs.
Bailey, J., concurs in part and concurs in result in part with a separate opinion.

| | |
|---|---|
| Rodney W. Falls, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | Court of Appeals Case No. <br> 18A-CR-2948 |

**Bailey, Judge, concurring in part and concurring in result in part.**

[31] Every criminal defendant is entitled to present a defense. *See, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Pruitt v. State*, 834 N.E.2d 90, 119-20 (Ind. 2005). Here, Falls was charged with stalking—and the statutory definition of "stalk" excludes "constitutionally protected activity." Ind. Code § 35-45-10-1. To meet the charge, Falls latched onto this exclusionary language. Indeed, Falls claimed he was engaged in a constitutionally protected activity—traveling in his vehicle—and could not be convicted of stalking. To advance this theory for consideration, Falls tendered a jury instruction that would apprise the jury of the constitutional right to travel. The trial court refused to give the tendered

instruction, and the majority upholds that decision. Although I ultimately take no issue with the result in this case, I write separately because I would conclude the trial court erred in refusing to give the jury instruction that was foundational to the theory of the defense—error that was harmless but error nonetheless.

[32] When reviewing the refusal to give a jury instruction, we consider: "(1) whether the tendered instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the tendered instruction." *Driver v. State*, 760 N.E.2d 611, 612 (Ind. 2002). The majority concludes—and I agree—that the tendered instruction "correctly states a legal principle." Slip op. at 8. Moreover, we can readily dispense with the second and third parts of the inquiry. Indeed, as to whether the evidence supports giving the instruction, "[e]ven if there is only a 'scintilla' of evidence in support of a criminal defendant's proposed defense instruction, it should be left to the province of the jury to determine whether that evidence is believable or unbelievable." *Hernandez v. State*, 45 N.E.3d 373, 378 (Ind. 2015). Here, it is undisputed Falls was in a vehicle, moving along roadways, and so there is at least a scintilla of evidence that supports instructing the jury regarding the constitutional right to travel—a potential defense to stalking. Finally, no other instruction apprised the jury of this specific right.

[33] The majority nevertheless concludes the instruction is incomplete in that it "fails to include a section explaining that the constitutional right to travel is not unlimited—namely, an explanation that the criminal regulation of stalking is a valid and well-recognized exception to that right." *Id.* The majority upholds

the refusal to give the instruction on the basis that an incomplete instruction "could have confused or misled the jury." *Id.* Yet, "[j]ury instructions are not to be considered in isolation but as a whole and with reference to each other." *Bonham v. State*, 644 N.E.2d 1223, 1227 (Ind. 1994). Here, other instructions apprised the jury of the very limitation on the right to travel that was germane to the charge and that the majority identifies—*i.e.*, that the jury could convict Falls for committing the criminal offense of stalking. Thus, when reading the instructions as a whole, I discern no tendency to confuse or mislead the jury.

[34] For the foregoing reasons, I would conclude the court erred in refusing to give the instruction. However, reversal is warranted only if the error prejudiced the defendant's substantial rights. *See* Ind. Appellate Rule 66(A); *Hernandez*, 45 N.E.3d at 376. In this case, the jury was instructed that the terms "stalk" and "harassment" did not include "statutorily or constitutionally protected activity." App. Vol. 2 at 163, 165. In closing arguments, Falls drew attention to these instructions and argued he was exercising the constitutional right to travel. Thus, even without the tendered jury instruction, the jury was informed of the constitutional right to travel and was aware of the potential constitutional defense to the charge of stalking. The error was harmless.